UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

# M-11-273

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

JIANJUN LIU,
    also known as "Cousin Bindi"
    and "Yi Gor,"

          Defendant.

- - - - - - - - - - - - - - - -X

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF ARREST WARRANT

(T. 18, U.S.C., § 1951(a))

EASTERN DISTRICT OF NEW YORK, SS:

       Philip Wu, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

       Upon information and belief, on or about and between August 16, 2010 and August 28, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JIANJUN LIU, also known as "Cousin Bindi" and "Yi Gor," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce and the movement of articles and commodities in commerce, by extortion, to wit: the extortion of the owner of a bus company.

       (Title 18, United States Code, Sections 1951(a))

       The source of your deponent's information and the grounds for his belief are as follows:[1]

---

    [1]    Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

1.     I have been a Special Agent assigned to the FBI squad that investigates Asian organized crime since April 2009. During my tenure with the FBI, I have participated in numerous organized crime investigations over the course of which I have conducted physical surveillance, executed search warrants, supervised the activities of cooperating witnesses, and reviewed recorded conversations of organized crime figures.  Through my training, education and experience, I have become familiar with organized criminal activities.

2.     As set forth below, there is probable cause to believe that the defendant JIANJUN LIU, also known as "Cousin Bindi" and "Yi Gor," together with others, conspired to extort the owner of a bus company (the "VICTIM BUS COMPANY").

3.     In August 2010, the VICTIM BUS COMPANY provided bus transport between Worcester, Massachusetts, and Brooklyn and Queens, New York.

4.     John Doe #1, who is an employee of the VICTIM BUS COMPANY, has advised:

a.     On or about August 16, 2010, a group of males approached John Doe #1 in the vicinity of a parking lot located at 60 Madison Street, Worcester, Massachusetts (hereinafter, the "Parking Lot").  One of those males then handed John Doe #1 a cellular telephone.

b.     On the other end of the cellular telephone was a male (hereinafter, "UM#1"), who told John Doe #1, in sum

and substance and in part, to tell the owner of the VICTIM BUS
COMPANY to either pay $50,000 or to stop providing bus service.

c.    Another male then rolled up one of John Doe
#1's shirt sleeves, wrote the telephone number (508) 246-8028 on
the arm of John Doe #1 and directed John Doe #1 to have the owner
of the VICTIM BUS COMPANY call (508) 246-8028.

5.    A review of a video recording taken of the
vicinity of the Parking Lot on or about August 16, 2010, reveals
the following:

a.    Shortly after two vehicles, one of which
appeared to be a light-colored Hyundai Elantra, entered the
Parking Lot, a group of males approached John Doe #1.

b.    One of the males then handed John Doe #1 a
cellular telephone.  Another male later rolled up the shirt
sleeve worn by John Doe #1 and appeared to write something on the
arm of John Doe #1.

6.    On or about August 25, 2010, John Doe #2, the
owner of the VICTIM BUS COMPANY, who was equipped with a
recording device, placed a telephone call to (508) 246-8028.  A
male, whose voice law enforcement agents subsequently identified
as Jian Hao Liu,[2/] told John Doe #2, in sum and substance and in
part, to pay $50,000.  Liu further warned John Doe #2, in sum and
substance and in part, that if he did not comply, the VICTIM BUS

---

[2/]    Because John Doe #2 was not a party to the telephone
call between John Doe #1 and UM#1, it is not clear whether UM#1
was also Liu.

COMPANY's buses would be damaged and/or the lives of the drivers employed by the VICTIM BUS COMPANY would be in jeopardy.

7.   Later in the evening, at approximately 6:50 p.m., on or about August 25, 2010, another male, who as described in paragraphs 12 through 16 was identified as the defendant JIANJUN LIU, also known as "Cousin Bindi" and "Yi Gor," placed a telephone call to John Doe #2, who was equipped with a recording device.  The defendant JIANJUN LIU, also known as "Cousin Bindi" and "Yi Gor," and John Doe #2 engaged in the following conversation in the Fuzhou dialect:[2/]

> John Doe #2:   So are you saying . . . I mean is it like, you say $50,000, and it is $50,000?  You have to leave some room for . . .
>
> DEFENDANT:   If not, if not, you'll see for yourself.
>
> John Doe #2:   It's not about me seeing for myself.  I do want to.  I do want to, give some.  Hey everybody gets a cup of tea, to make a gesture, to, to settle this, you know?  No, no need to whatever.  Could you be like. . . $50,000 and it has to be $50,000.  What have to negotiate a little bit, right?
>
> DEFENDANT:   If not, okay, pay $30,000, [then] $5,000 every month.
>
> John Doe #2:   Another $5,000 every month?

---

[2/]   The excerpts of recorded conversations included herein are based on draft transcripts of those conversations, which are subject to revision.

DEFENDANT:      Yeah.  If not, whatever it is,
                you'll see for yourself, okay?
                That's the bottom line, okay?

                      * * *

John Doe #2:    If I really pay you $50,000,
                what can you guarantee for me?
                You, you have to tell me.
                First, I've never seen you.

DEFENDANT:      You pay $50,000, okay, I'll
                guarantee your safety in
                Massachusetts, okay.

John Doe #2:    Safety in Massachusetts?

DEFENDANT:      It's a definitely guarantee
                that no kid would touch you,
                okay?

John Doe #2:    En.

DEFENDANT:      No need to say anything more.

8.   On or about August 26, 2010, at the direction of
the FBI, John Doe #2 engaged in several phone conversations with
one or more males who called from or answered telephone number
(508) 246-8028, during which conversations they discussed how the
above-referenced payment would be made.  During one of those
conversations, a male using telephone number (508) 246-8028
proposed that John Doe #2 send a payment by Western Union to
"Diamond Weah."  John Doe #2 ultimately agreed, in sum and
substance and in part, that he would bring $10,000 to the Parking
Lot at approximately 4:15 p.m. on August 27, 2010 and that he
would make four subsequent payments of $10,000 in accordance with
the demand.

9.   On August 27, 2010, at approximately 4:15 p.m.,
agents of the FBI equipped John Doe #2 with a recording device

and directed him to wait in the Parking Lot.  John Doe #2 brought $10,000 packaged in a blue gift bag.  The agents then conducted surveillance in the vicinity of the Parking Lot and made the following observations.

       a.  A red vehicle (hereinafter, "Vehicle #1") drove into a gas station located in close proximity to the Parking Lot and shortly thereafter drove into the Parking Lot.

       b.  The driver of Vehicle #1, who as described in paragraph 10 was later identified as Jian Hao Liu, then exited Vehicle #1 and entered the back seat of a white SUV (hereinafter, "Vehicle #2"), which was already parked in the Parking Lot.

       c.  The driver of Vehicle #2, who as described in paragraph 10 was later identified as Hung Danh, pulled the driver's side of Vehicle #2 alongside the driver's side of a vehicle driven by John Doe #2, which was parked in the Parking Lot.

       d.  Shortly thereafter, Vehicle #2 exited the Parking Lot.

       10.  Shortly after Vehicle #2 exited the Parking Lot, agents of the FBI conducted a car stop of Vehicle #2.  In the front driver's seat was Hung Danh; in the front passenger's seat was Diamond Weah; in the rear seat directly behind the driver's seat was Jian Hao Liu.  FBI agents recovered a blue gift bag containing $10,000 underneath the rear seat directly behind the driver's seat.  Danh, Weah and Liu were then placed under arrest.

11.   John Doe #2 has advised the following in regard to what transpired in the Parking Lot on August 27, 2010.

a.   Vehicle #2 pulled up alongside the vehicle in which John Doe #2 was driving.

b.   The driver of Vehicle #2, who was subsequently identified as Hung Danh, asked, in sum and substance and in part, for "the money."

c.   John Doe #2 then gave the $10,000, which was packaged in the blue gift bag, to the individual in the driver's side passenger seat of Vehicle #2, who was subsequently identified as Jian Hao Liu.  Liu then asked John Doe #2, in sum and substance and in part, when he would provide the remaining money.

12.   Law enforcement agents have reviewed all of the recorded telephone calls placed to Victim #2 in regard to the above-described extortion scheme, and determined that three voices – Liu's voice, Danh's voice and the voice of the individual who placed the call on August 25, 2010 at 6:50 p.m – were intercepted on those calls.

13.   Following Liu's arrest, Liu was advised of his Miranda rights, which rights he indicated he understood and agreed to waive.  Liu advised, in sum and substance and in part, that his cousin, whom he called "Yi Gor," which means "Second Big Brother" in Cantonese, and whom he described as an owner of a restaurant named "China Fun," told Liu to send a message to the Jing Ling Bus Company to either pay the money or stop operating

the bus route between New York and Massachusetts.  Liu also
advised, in sum and substance and in part, that at approximately
6:00 p.m., on August 25, 2010, his cousin made a telephone call
to the owner of the Jing Ling Bus Company, i.e., John Doe #2.

14.  Following Liu's arrest, Liu also consented to a
search of the cellular telephone in his possession.  A search of
the contacts in Liu's cellular telephone revealed that the
telephone number, 917-648-3681, corresponds with "Cousin Bindi."

15.  Telephone records reveal that the subscriber of
the telephone number that called John Doe #2 on August 25, 2010
at 6:50 p.m. was "Jianjun Liu," who resides at an address in
Cranston, Rhode Island.

16.  A check of public records reveals that "Jianjun
Liu" at the Cranston, Rhode Island address listed in connection
with the telephone records described in paragraph 14 is
affiliated with China Fun, Inc., a Chinese food restaurant in
Cranston, Rhode Island, and was previously listed as the
"president" of China Fun, Inc.

17.  Because public filing of this document could
result in a risk of flight by the defendant, as well as
jeopardize the government's investigation, your deponent
respectfully requests that the complaint and arrest warrant be
filed under seal.

9

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued so that the defendant JIANJUN LIU, also known as "Cousin Bindi" and "Yi Gor," may be dealt with according to law.

Philip Wu
Special Agent, FBI

Sworn to before me this
14th day of March, 2011

S/ Pollak

THE HONORAB
United/Stat
Eastern Dis